**John J. MOYLAN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15411.**

United States Court of Appeals Ninth Circuit.

Aug. 8, 1957.

Rehearing Denied Sept. 11, 1957.

Thomas J. Gately, San Pedro, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Richard A. Lavine, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS and BARNES, Circuit Judges, and WALSH, District Judge.

CHAMBERS, Circuit Judge.

Moylan is a freight forwarder at Los Angeles. For a year prior to June 30, 1951, under a specific contract with the General Services Administration, the housekeeping organization of the United States government, he guided through the Port of Los Angeles and on to vessels outbound into the Pacific a considerable volume of government freight. It is fair to say that his contract price of six and one-half cents per ton plus a fee of $7.50 for each shipment was a modest one. Moylan says the reason he bid for and obtained the contract at these rates was that when he did he was a beginner and anxious to get started in the business.

In June, 1951, the West Coast carriers affiliated together under the name of Pacific Westbound Conference initiated the practice of paying freight forwarders such as Moylan a brokerage fee of one and one-fourth per cent of the shipping charges.[1] Obviously, General Services immediately was desirous of eliminating its brokerage fees to Moylan, but there were obstacles. The new rules of the Pacific Conference required that the selection of the carrier for each shipment be made by the freight forwarder. General Services took the position that it had to retain the right to select the carriers, that is, the booking.

In August, 1954, some manner of "initial booking" by General Services in Washington and "confirmation booking" by the freight forwarder was arranged that was acceptable to the Pacific Conference. Thereupon, Moylan was formally designated by certificate filed with the conference by General Services as a freight forwarder for the government. And since 1954 Moylan has been receiving the pay for his services to General Services from the carriers—two steps removed from the taxpayers, rather than one.

But what of the interim? For two years and two months after June 30, 1951, with no express bilateral written contract with the government and without the certification required by the Pacific carriers Moylan acted as freight forwarder for General Services. During this time he pressed to have his status clarified. The pattern of the Pacific Conference just did not mesh with the government's plan of doing business, and it took three years to remodel the Pacific Conference's and the government's contract machinery.

For the two years, two months of uncompensated service if paid for at the rate listed under Moylan's expired contract, he would be entitled to $1,881.10. But if Moylan could have been paid the one and one-fourth per cent by the carriers his compensation would have been $8,305.24. Eventually, Moylan filed his claim with the government for this $8,305.24. The General Accounting Office allowed only $1,881.10 and tendered a treasury check for that amount

---

1. A prerequisite to the commission or fee was the filing by the shipper of a formal designation of the forwarder as the shipper's forwarder.

which Moylan received but has not yet cashed, being unhappy with the settlement. Following receipt of this, to him, inadequate check, Moylan sued in the United States District Court at Los Angeles for the sum of $8,305, being 24 cents less than the amount he could have been paid by the carriers had he been certified all along. It may be assumed that sub silentio Moylan proposed to return the check for $1,881.10.

The government's position in the accounting office and at the trial was that Moylan did perform services at the request of the government for which he should be paid the reasonable value, but no more than at the expired contract rate, to wit: $1,881.10, the sum already tendered. This position the trial court sustained. The judgment contemplates that Moylan may cash the check which he already has, but no more.

In his complaint and at the trial, in addition to his quantum meruit claim, Moylan sought to establish an express contract. One theory was that of unilateral contract: The government by accepting Moylan's performance had made a contract. The trial court found there was no contract during the period in suit. After examining the record, including the exhibits, this court agrees.

At no time after June 30, 1951, did Moylan agree that the old contract rate was acceptable. He was steadily pressing for the certification to the Pacific Conference so that he could collect his one and one-fourth per cent, not from the government but from the carriers. It could not be said that by any means he consented to a continuance of his old cut-rate arrangement. But he kept on performing the forwarding service on the outbound Pacific freight of General Services. If one could find an express contract here, there still is the insuperable block that there is no showing of a contracting act by an authorized contracting officer. There is just too much herein of Federal Crop Insurance v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10, to permit a recovery on express contract or upon some sort of an estoppel.

Appellant also complains of the quantum meruit finding that $1,881.10, already tendered, was the reasonable value of the services. Certainly the award cannot be called generous. However, Moylan's last contract rate was admissible as evidence of the reasonable value of his services. It may be assumed that the percentage rate paid by the carriers after they commenced to absorb the compensation for forwarders was also competent evidence to receive. There is every indication in the record that if the trial court had been given some intelligent middle ground upon which to land, that such would have been done. But the court was given no such opportunity. If there had been proof that there was during the period in question a uniform rate paid by shippers, not carriers, this court could explore whether the ruling below was clearly erroneous. But the reasonable value of services performed for a buyer is not always the same as when performed for a seller. Generally, when the seller pays there is an element of "you got us the business" to be paid for. That would be true here where the forwarders on private shipments probably were free to select the carrier. Apparently, only on the government shipments was there a formal restriction on selection of a carrier.

Here there was a justifiable reason for the trial court to reject the higher figure. Then under the evidence the court had little choice except to take the low figure. Not too much may be required for a trier of facts to come up with an intermediate figure, but it should have some foundation.

General Services Administration seems to have been unduly ponderous in handling its business with Moylan. But on its side it can be said that the new mode of the Pacific carrier's conference adopted in 1951, whereunder the carriers undertook to pay the forwarder, was not tailor-made for government shipments. Adjustments had to be made before it was usable. To have immediately accepted and certified Moylan, giving

Moylan control over bookings, if such could have been done, might have provoked on honorable men criticism of favoritism.

The judgment is affirmed.[2]

2. Appellee suggests here that perhaps this is a case in which the government has not consented to be sued. Then it is cavalierly said that since the judgment gave Moylan nothing he did not have already, and the judgment (it says) is correct if the government has consented to be sued; therefore, it will not press this possible defect. If such defect exists it should be disclosed—even now.